## CITY OF ST. PETERSBURG v 15 FT. ALUMININUM TWIN AXLE TRAILER, etc.

### Case No. 88-9597-01

Sixth Judicial Circuit, Pinellas County

August 1, 1989 (as corrected August 21, 1989)

### APPEARANCES OF COUNSEL

**Sherman Wayne Smith,** for petitioner.

**Joseph Donahey** and **Sondra Goldenfarb,** for respondent, Kennety T. Hussey.

**William Murphy,** for respondents, Jacob and Reva Robbins.

### OPINION OF THE COURT

CLAIRE K. LUTEN, Circuit Judge.

ON JULY 7, 1989, the Court held a forfeiture hearing in the above-styled case. The Petitioner, City of St. Petersburg, (City), was represented by Sherman Wayne Smith; Respondent, Kenneth T. Hussey, (Hussey), was present and represented by Joseph Donahey and Sondra Goldenbarb; Respondents, Jacob and Reva Robbins, (Robbins), were present and represented by William Murphy.

The first issue before the Court is whether certain machine, owned by Hussey, and commonly called bulldozers (a form of penny-fall

machines), constitute gambling devices within the meaning of F.S. 849.16. The Court finds in the affirmative.

The second issue is whether the forfeiture is barred because of a security interest allegedly held by Robbins. The Court finds in the negative.

F.S. § 849.15 prohibits the possession of a machine or device which, under F.S. § 849.16,

". . . is one . . . that as a result of the insertion of any . . . coin, such machine or device is caused to operate . . . and if the user, by *reasons of any element of chance or any other outcome unpredict-able by him," (emphasis added)* receives a "pay-off" in money, other things of value or additional chances.

It is undisputed that the subject matter of this forfeiture hearing consists of machines or devices, and that they are operated by the insertion of a coin, and that they will provide a "pay-off" is a result of skill or of "any element of chance" or of any unpredictable outcome.

The machines consist of a playing field covered with coins and/or tokens and/or small prizes. At the rear of the playing field is a moving backboard which travels forward and backward at a set rate of speed and which may be stopped in any position by the use of a stop button. A coin is placed vertically in a chute and drops through the chute to fall from a height of approximately 2½ inches onto the playing field. The chute itself may be moved from side to side within a certain area of the playing field. Slots are located, almost invisibly, along the sides of the playing field. Coins/tokens which fall into those slots become the property of the machine owner. A slightly raised lip at the front of the playing field will allow coins/tokens to fall into an area for the player to recover.

The Court heard, for the Respondent, testimony from William Reidthaller, that due to the inherent nature of the machine, more coins fall through the side slots than go over the front lip, and at a disproportionate rate. This is due to the physics of weight and motion on the field, as well as a condition of "stacking" whereby coins/tokens layer themselves at the front lip creating greater resistance to the push of the coins on the balance of the playing field.

Additionally, Mr. Reidthaller contends that while the stop button and chute mobility permit some skill to be exercised by the player, this skill is a minor consideration and basically any "pay-off" is a result of pure chance and is unpredictable. In support of his position, the Court received Petitioner's Exhibit #3.

174

Hussey contends, through testimony of Lee A. Weaver, Ph.D., that these machines are actually games of skill. Weaver testified that a skillful player may, through use of the stop bottom, and mobile chute, place a certain number of coins on the playing field within a limited area, thus creating a sufficient block to move the coins on the playing field and overcome the resistance caused by "stacking" and the slightly raised lip. In support of his position, the Court received Hussey's Exhibit #1.

The Court examined and played the machines. It quickly became apparent that a single dropped coin would have virtually no affect on the coins on the playing field, and that a number of coins needed to be dropped into a limited space to provide the necessary weight to move the coins/tokens on the playing field. This discovery constitutes knowledge; the issue then becomes whether the application of the knowledge requires the use of skill to the extent that the machine does not violate the law.

Both sides have cited, to the Court, *Deeb v Stoutamire,* 53 So.2d 873 (S.Ct. 1951), which appears to be the only case to really touch upon this issue. The Court, in *Deeb,* felt that virtually any game which required the exercise of skill would be unpredictable. Hence, the Court, at pg. 874, stated "that inasmuch as the machine itself is on trial, so to speak, it should not be condemned unless this element of unpredictability is inherent in it." The Court, in reaching its conclusion, that the devices it had under consideration were lawful, stated:

> We conclude that . . . the score totaled has not depended on chance or other result unpredictably by the player, except such chance or unpredictability as is traceable to his own skill . . . as distinguishable from the chance or unpredictability of the mechanism . . ." (pg. 875).

In should be noted that in *Deeb,* the Court was reviewing the finding of the chancellor who had determined that the game involved was primarily a game of skill, but felt there was some elements of mechanical chance such as a spot of moisture or roughness on the alley or a bit of rust on the puck.

This Court had extreme difficulty in resolving the case before it. In order to properly preserve the issues for appellate purposes, the Court feels it is necessary to spell out these difficulties, so that they may be properly reviewed, inasmuch as the Court finds little, if any, direction to be received from *Deeb.*

*Webster's Ninth New Collegiate Dictionary* defines skill as "the

ability to use one's knowledge effectively and readily in execution or performance; a developed aptitude or ability." The bulldozer machines do require skill. A player must realize the need to place the coins in a certain area and then effect that placement accurately. This is clearly the use of skill. Additionally, the study conducted by We. Weaver (Hussey's Exhibit #1) would bear this out. However, this Court cannot find, as did the chancellor, that bulldozer machines are *essentially* a game of skill. There is still a great deal of chance left in the machine, by virtue of the machine itself. The ability of the player to place the coins in a limited area is chancy; control over the chute is limited. However, the use of skill definitely has an affect on the placement. Determining, albeit by trial and error, the number of coins necessary to create a sufficient block to offset the normal motion sidewise of the coins to the path of least resistance requires the use of knowledge. But the deceptively simple look of the machine creates a false impression in the mind of the player.

While the statute states that a game is illegal if it "pays-off" because of "any element of chance," clearly that cannot be interpreted strictly as the Court agrees that every game involving the useof human skills contains an element of chance. Therefore, this Court feels it must balance the need of skill against the elements of chance.

This Court is also cognizant of the fact that forfeitures are not looked on kindly. Nor is the Court unaware that bulldozer games have been examined and approved in the past by municipal law enforcement agencies in this state.

In viewing all the evidence and testimony, and, in actually viewing and operating the machines, the Court finds that the bulldozer machines in question, while requiring elements of skill, consist of more chance than skill, and are, therefore, violative of F.S. 849.16, and subject to confiscation.

The second issue before the Court relates to the Respondents, Robbins'. Mr. and Mrs. Robbins lent their son, Hussey, the funds with which to purchase the equipment. In return for this loan, Hussey executed to the Robbins a chattel mortgage, which gave to Robbins, a security interest in the trailer and the machines contained therein. For whatever reason, whether because of the familial relationship or prior experience with the Court system, the Robbins' failed to file the chattel mortgage until a time subsequent to the seizure.

Petitioner alleged that inasmuch as the security interest of the Robbins' was not perfected until a time subsequent to the forfeiture, they have no superior interest in the trailer and machines, and that summary judgment should be granted in favor of Petitioner.

176

Florida statutes and case law are clear that in order for a lienholder to successfully defend against a forfeiture action, the lien must be perfected and further, that the lien must be perfected prior to the date of the forfeiture. While Robbins' may not have felt it necessary to perfect this lien as against their son, the law requires that it must be perfected as against any others.

The Court is not unsympathetic of the Robbins' plight; however, the law requires that the Motion for Summary Judgment filed by Petitioner be granted. It is therefore

ORDERED AND ADJUDGED that the Petition for Forfeiture of a 15 foot aluminum, twin axle trailer, white in color, with blue trim, and $1,382.46, be and the same is GRANTED, in favor of the City of St. Petersburg, and against the Respondent, Kennedy Hussey. It is further

ORDERED AND ADJUDGED that the Petitioner's Motion for Summary Judgment against the Respondent, Jacob and Reva Robbins, be, and the same is hereby granted.

DONE and ORDERED in Chambers, at Clearwater, Pinellas County, Florida, this 21st day of August, 1989.